# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STUART N. AULD, | |
| *Plaintiff*, | |
| vs. | Case No. 09-1139-EFM |
| VALUE PLACE PROPERTY MANAGEMENT LLC, et al., | |
| *Defendants.* | |

## MEMORANDUM AND ORDER

On December 4, 2006, Plaintiff Stuart Auld received an offer of employment as Director,

Development Services from Defendants Value Place Property Management, LLC (VPPM) and/or

Value Place Real Estate Services, LLC (VPRES), signed by Defendant Douglas G. Rupe in the

capacity of Senior Vice President, Development Services.[1]  Plaintiff accepted the position with

Defendants and moved to Wichita where he worked until September 4, 2007 when his employment

was terminated.  Prior to his termination, Plaintiff claims that he never received any notice, either

orally or in writing, that his job performance was substandard.  After his termination, Plaintiff sent

Defendants a letter requesting information concerning reasons for his discharge, and also requested

a statement indicating the nature of his services with the company.  After Plaintiff received no

response to his requests for information, he filed a lawsuit in the Jackson County, Missouri court

---

[1]Defendant Rupe is named in both his official capacity and individually, as are Defendants David Redfern and C. Roger Bolton.

(16th Judicial District), alleging a number of claims, including breach of an express and implied employment contract, breach of implied covenant of good faith and fair dealing, defamation, fraud, conspiracy, and quantum meruit.  The state court, pursuant to Missouri Supreme Court rules, ordered the parties to mediate their claims, but prior to mediation, Defendants removed the action to the United States District Court for the Western District of Missouri.  After removal to the W.D. of Missouri, Defendants filed a motion to transfer the case to the District of Kansas, which the court granted and transferred the case to the District of Kansas.  Now before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 36), Plaintiff's combined Motion to Enforce the Prior Orders of the Court and Motion for Reconsideration of Transfer (Doc. 30), and Plaintiff's combined Motion to Transfer and Motion for Leave to Amend Pleadings (Doc. 41).

## ANALYSIS

### 1. Motion for Judgment on the Pleading

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).[2]  In ruling on a Rule 12(b)(6) motion to dismiss, the court will draw all reasonable inferences in favor of the plaintiff.[3]  Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4]  A complaint must give the defendant fair notice of what the plaintiff's claim is

---

[2]*See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

[3]*Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

[4]Fed. R. Civ. P. 8(a)(2).

and the grounds upon which it rests.[5]  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[6]  Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[7]  But, the issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[8]

The plausibility standard enunciated in *Bell Atl. Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.' "[9]  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.' "[10]  "A claim has facial plausibility when the plaintiff pleads factual

---

[5]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the United States Supreme Court explained in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007): "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

[6]*Twombly*, 550 U.S. at 555.

[7]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[8]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

[9]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[10]*Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Because Plaintiff is pursuing this action *pro se*, the Court must be mindful of additional considerations. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[12] However, "it is not the proper function of the district court to assume the role of advocate for the *pro se* litigant."[13] "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[14]

The causes of action alleged by Plaintiff are not easily discernable. In his Petition, Plaintiff formally names five causes of action, but within those specific counts, it appears that he might be attempting to allege a number of additional causes of action. Therefore, because a *pro se* litigant's pleadings are construed liberally, the Court will address each claim that his Petition might suggest he is attempting to raise irrespective of the manner in which Plaintiff labeled them.

### a. Breach of Express Contract of Employment

In Plaintiff's Petition, Plaintiff alleges breach of an express employment contract. Plaintiff claims that Defendants hired him pursuant to a "letter agreement of employment" dated December 4, 2006, which he attached to his Petition as Exhibit A. Plaintiff further alleges that it was represented to him that this employment would be long-term, and that he would have an interest in

---

[11]*Id.* at 1949.

[12]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13]*Id.*

[14]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

Defendants' Employee Trust.  In addition, due to accepting this employment, Plaintiff claims he abandoned other employment opportunities.  Accordingly, Plaintiff alleges that these considerations, coupled with the "letter agreement of employment," constitutes an express employment agreement for an indefinite term that may only be terminated for cause.[15]

Kansas subscribes to the employment at will doctrine.  Absent an express or implied contract of fixed duration, or where recognized public policy concerns are raised, employment is terminable at the will of either party.[16]  Here, Plaintiff relies on Exhibit A to support his claim that an express contract for employment existed that precluded his termination except for cause.  While no Defendant agrees that such document created an express contract of employment, they do not dispute the content of the document.  Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.' "[17]

---

[15]In his Response to Defendants' motion, Plaintiff asserts that the "letter agreement of employment," attached as Exhibit A, reflects the agreement reached by the parties after several negotiations between Defendants Seifert and Rupe.

[16]*Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1046 (D. Kan. 1998); *see also Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

[17]*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Defendants also rely on affidavits attached as exhibits to their Answer to support their arguments in the instant motion.  Defendants cite to *Richard v. Perkins*, 373 F. Supp. 2d 1211, 1214-15 (D. Kan. 2005), in support of their position that these affidavits are part of the pleadings to which the Court may consider without converting the motion to one for summary judgment.  In *Richard*, the Court determined that letters attached to the defendant's answer were technically part of the pleadings, and the Court considered those documents without converting the motion for judgment on the pleadings to one for summary judgment.  However, in *Tal*, the Tenth Circuit indicated that "consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. . . .  However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment," but "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein."  *Tal*, 453 F.3d at 1265 n.24.  Therefore, because we decline to convert the instant motion to one for summary judgment, the Court will not consider the affidavits attached to Defendants' Answer.

After careful review, the Court concludes that this document does not constitute an express contract of employment. Exhibit A contains no statements indicating duration of employment, nor does it limit termination solely for cause.[18]  Even if the offer letter contained language describing Plaintiff's employment as "indefinite," "permanent," or "long-term," such language would not create a contract of employment for a fixed or definite period of time, but rather, would simply indicate that "the job is of some permanence as distinguished from being temporary."[19]  Therefore, because Exhibit A is an offer letter that does not constitute an express contract of employment, and because Plaintiff's Removed Petition fails to identify any other express employment contract between the parties, his claim fails as a matter of law.[20]  Defendants' Motion is granted with respect to this claim.

### b. Breach of Implied Contract of Employment

An implied contract of employment arises from facts and circumstances showing mutual intent to contract.[21]  In Kansas, the established rule is that the intent of the contracting parties is normally a question of fact for the jury, and determination of whether there is an implied contract

---

[18]*See Gooch v. Meadowbrook Healthcare Servs of Fla., Inc.*, 1996 WL 67193, at *5 (10th Cir. Feb. 16, 1996).

[19]*Cheek v. City of Edwardsville, Kan.*, 514 F. Supp. 2d 1220, 1235 (D. Kan. 2007) (citing *Johnson v. Nat'l Beef Packing Co.*, 220 Kan. 52, 54-55, 551 P.2d 779, 782 (1976)).

[20]While not entirely clear, it appears that Plaintiff may contend that Missouri, rather than Kansas law, should apply to his claims.  Interestingly, Plaintiff cites to no Missouri law in support of his arguments, but instead, cites to Kansas, the District of Kansas, and Tenth Circuit caselaw.  Nevertheless, the Court would reach the same result applying Missouri law.  Missouri follows the employment-at-will doctrine, and "an employment agreement with no fixed duration is deemed to be at-will and either party may therefore terminate the employment relationship with or without cause absent a specific contract term to the contrary."  *Teets v. Am. Family Mut. Ins. Co.*, 272 S.W.3d 455, 464-65 (Mo. Ct. App. 2008).

[21]*Litton v. Maverick Paper Co.*, 354 F. Supp. 2d 1209, 1217 (D. Kan. 2005) (citing *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, 23, 894 P.2d 909, 915 (1995)).

in employment requires a factual inquiry.[22] Factors to be considered in determining whether the parties had a mutual intent to contract include the understanding and intent of the parties, which are ascertainable from written and oral negotiations, the conduct of the parties, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to make clear the intention of the parties at the time the employment relationship commenced.[23] A plaintiff's unilateral expectations are insufficient to establish a contract for continued employment; the parties must have a mutual intent to enter into an employment contract.[24]

Plaintiff claim for breach of an implied contract of employment appears to rest on the same factual allegations raised in support of his claim for breach of express contract of employment. Plaintiff, however, has failed to plead any facts outside those simply demonstrating his own unilateral expectation to long-term employment. He has not identified any conduct by Defendants, nor any circumstances of his employment that would suggest the parties intended his employment to be for any fixed period of time or terminable only for cause. While Plaintiff relies on the terms of his offer letter for support, for reasons previously stated, such letter provides no basis for this claim. In fact, as Plaintiff asserted in his Response to the instant motion, the offer letter is the product of all previous negotiations for his employment, and any terms suggesting duration of employment or termination for cause are absent from that document. Construing the Petition in the most liberal manner possible, we can find no plausible factual basis that permits the Court to draw

---

[22]*Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1044 (D. Kan. 1998) (citing *Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 512, 738 P.2d 841, 848 (1987)).

[23]*Id.* at 1044-45 (citations omitted).

[24]*Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1492 (10th Cir. 1995).

the reasonable inference that Defendants might be liable for the misconduct alleged sufficient to support this allegation. Therefore, we grant Defendants' motion with respect to this claim.

### c. Breach of Oral Contract

Plaintiff also appears to allege breach of an oral contract. In his Petition, Plaintiff claims that during negotiations for hiring, Defendants, through Defendant Rupe, represented that he would be on "equal footing" with regards to workload, pay, and bonus as Defendants' other Director of Development, Butch Ness. Plaintiff included with his Petition a flowchart allegedly representing Defendants' reporting structure that shows Plaintiff, as Director of Development Services overseeing seven employees, on the same reporting level as Mr. Ness, identified as Vice President Development Services overseeing eight different employees, not including Plaintiff. Plaintiff alleges that he never received pay equal to Mr. Ness as was agreed upon between him and Mr. Rupe. Plaintiff further pleads that he did not receive bonuses equal to those received by Mr. Ness on similar projects as agreed, claiming he received $500 bonus per project while Mr. Ness received $1000 per project. Based on the foregoing and, drawing all reasonable inferences in favor of Plaintiff, we find that Plaintiff has pled sufficient facts to satisfy the liberal pleading requirements of Fed. R. Civ. P. 8. Therefore, we deny Defendants' motion with respect to this claim. However, because the Court believes that this alleged oral contract was with Plaintiff's employer, VPRES, and not with any other Defendant, this claim may only proceed against Plaintiff's employer, VPRES, and it is dismissed as to all other Defendants.[25]

### d. Breach of Implied Covenant of Good Faith and Fair Dealing

---

[25]*See Baxter v. Farm Bureau Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 17205, at *29 (D. Kan. Mar. 4, 2008). While Defendants' arguments with respect to this claim may have merit, they require the Court to consider affidavits and other evidence that are outside the pleadings; therefore, such arguments and evidence are more appropriate for consideration at the summary judgment stage rather than in deciding this Rule 12(c) motion.

Plaintiff claims that Defendants breached an implied covenant of good faith and fair dealing through the manner in which they applied company policy in terminating his employment. Under Kansas law, however, the duty of good faith and fair dealing does not apply to employment-at-will agreements.[26] In addition, courts have rejected "good faith and fair dealing" claims in the employment context regardless of whether an express or implied employment contract exists.[27] Thus, because Plaintiff brings this claim in the context of his employment, the Court grants Defendants' motion with respect to Plaintiff's good faith and fair dealing claim.

### e. Defamation

The tort of defamation includes both libel and slander.[28] To state a claim for defamation, Plaintiff must allege false and defamatory words communicated to a third person that resulted in harm to his reputation.[29] Defamation claims, however, are subject to a heightened-pleading standard.[30] As explained by this Court in *Fisher v. Lynch*,[31]

> [D]efamation claims present a "significant exception" to general liberal pleading standards because defamation constitutes a "traditionally disfavored" cause of action. To sufficiently plead a defamation claim, the complaint must allege the defamatory

---

[26]*Doud v. Countrywide Home Mortgage Loan*, 1997 WL 292127, at *10 (D. Kan. May 5, 1997) (citing *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 175, 872 P.2d 252, 261 (1994); *Morriss v. Coleman Co.*, 241 Kan. 501, 518, 738 P.2d 841, 851 (1987)).

[27]*See, e.g., Morriss*, 241 Kan. at 518, 738 P.2d 851 (affirming summary judgment on good faith and fair dealing claim even though fact question existed with respect to implied employment contract claim).

[28]*Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 102, 864 P.2d 744, 750 (1993).

[29]*McCauley v. Raytheon Travel Air Co.*, 152 F. Supp. 2d 1267 (D. Kan. 2001); *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495, 504 (2004).

[30]*Marten v. Yellow Freight System, Inc.*, 993 F. Supp. 822, 829 (D. Kan. 1998).

[31]531 F. Supp. 2d 1253 (D. Kan. 2008).

words, the communicator of those words, the persons to whom those words were published and the time and place of publication."[32]

In the context of a defamation claim, the complaint must "provide sufficient notice of the communications complained of to allow [the defendant] to defend itself."[33]

In his Petition, Plaintiff alleges that each Defendant made false statements, verbally and in writing, and that they knew or should have known were false at the time the statements were made. Plaintiff claims that these false statements included, among others, that he failed to report vacation and sick leave, that he had unexcused absences, that he was late to a public hearing on July 11, 2007, and that he failed to complete assignments on time. Plaintiff further alleges that as a result of these false statements, he suffered numerous types of damage, including improper employee reviews and discipline, and loss of his employment.

Defendants argue that Plaintiff failed to sufficiently allege damage to his reputation. But even if he did allege sufficient damage to his reputation, Defendants contend any such communications were qualifiedly privileged. Further, Defendants argue that Plaintiff's defamation claim fails because he neglected to allege in sufficient detail the defamatory words spoken, which defendant spoke those words, whom the words were spoken to, and the time and place the words were spoken. We agree.[34]

---

[32]*Id.* at 1271.

[33]*Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997) (citing *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989)).

[34]We decline to address Defendants' qualified privilege claim at this time. Remarks that are communicated by one corporate employee to another concerning the job performance of a third employee are publication for the purposes of a defamation action. *Luttrell v. United Tel. Sys., Inc.*, 9 Kan. App. 2d 620, 623, 683 P.2d 1292, 1294 (Kan. Ct. App. 1984). While those communication *may* be privileged, such an finding requires the Court to consider matters outside the pleadings, and therefore, such arguments are more appropriate for summary judgment rather than a motion brought under Rule 12(c).

Because of the heightened pleading standard, we conclude that Plaintiff has not sufficiently pled his claim for defamation. While Plaintiff identifies in his Petition five defamatory statements allegedly made generally, he fails to identify with the necessary specificity which Defendant made any particular statements, or to whom and specifically when the statements were made other than to state such communications took place "on or before September 4, 2007." However, because this deficiency is procedural and not substantive, Plaintiff may amend his Petition to allege additional clarifying facts with respect to his defamation claim. Therefore, Defendants' motion is denied as it relates to this claim, provided such amendment is effected. In the case Plaintiff fails to amend his Petition with respect to this defamation claim by March 15, 2009, this claim shall be dismissed for failure to state a claim without further Court action.

### f. Negligent Termination or Discharge

Plaintiff appears to allege that Defendants were negligent in terminating his employment. However, Kansas does not recognize a claim for negligent termination or discharge,[35] and therefore, Defendants' motion is granted with respect to this claim.

### g. Wrongful or Retaliatory Discharge

It also appears from Plaintiff's Petition that he might be alleging wrongful or retaliatory discharge. From what the Court is able to glean from Plaintiff's Petition, he is claiming that he was wrongfully discharged in retaliation for using sick leave which resulted in his missing a meeting the week before his termination. In addition, it appears he is claiming that he was terminated for reporting that he had to attend a court hearing, which caused him to miss the same meeting.

---

[35]*See Lay v. Horizon*, 60 F. Supp. 2d 1234, 1242 n.2 (D. Kan. 1999); *Stever v. St. Francis Health Ctr., Inc.*, 2008 WL 360693, at *1 (Kan. Ct. App. Feb. 8, 2008).

To prevail on his retaliatory discharge claims and overcome the employment-at-will doctrine, Plaintiff must demonstrate that either (1) Kansas courts have recognized his retaliatory discharge claims as exceptions to the employment-at-will doctrine, or (2) the conduct on which his retaliatory discharge claims are based is protected by Kansas public policy and no alternative state or federal remedy exists.[36] Kansas courts have narrowly construed the public policy exceptions to this doctrine.[37] The three exceptions that the Kansas courts have recognized are: (1) when an employer terminates an employee because he asserted workers' compensation rights; (2) when an employer terminates an employee for a good faith report or threat to report a serious infraction of rules, regulations, or law pertaining to the public health, safety and the general welfare by a coworker or employer (i.e., "whistleblowing"); and (3) when an employer terminates an employee for exercising his rights under the Federal Employers Liability Act.[38] Plaintiff's claim does not rest on any of these factors, but instead, relates to his use of an employee benefit (sick leave) and/or his appearance in court. We have found no authority that support Plaintiff's proposition that these facts are recognized as an exception to the doctrine of employee-at-will under Kansas law. Therefore, because we cannot find that Plaintiff's allegations would fit any identified exception or otherwise involve a clearly-defined public policy,[39] Defendants' motion with respect to Plaintiff's wrongful or retaliatory discharge claim is granted.

---

[36]*Butler v. City of Prairie Village*, 961 F. Supp. 1470, 1474 (D. Kan. 1997) (reversed on other grounds).

[37]*See Pierce v. Engle*, 726 F.Supp. 1231, 1235 (D. Kan. 1989) (applying Kansas law).

[38]*Ellis v. Isoray Med., Inc.*, 2008 WL 3915097, at *3 (D. Kan. Aug. 22, 2008) (citing *Hysten v. Burlington N. Santa Fe Ry. Co.*, 277 Kan. 551, 108 P.3d 437, 440, 443-44 (2004)).

[39]*See Palmer v. Brown*, 752 P.2d 685, 689 (Kan.1988) (holding that a public policy cannot be determined on a subjective basis, but "should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.").

### h. *Failure to Pay Overtime under the Fair Labor Standards Act*

Plaintiff appears to allege that Defendants violated the Fair Labor Standards Act (FLSA)[40] by not paying him overtime for numerous hours worked attending city hearings and in performing other tasks as his position required. In his Petition, Plaintiff describes his position as Director of Development and alleges that he was paid an annual salary of $85,000, and was responsible for a number of employees. Under the FLSA, the provisions of the FLSA requiring an employer to pay overtime do not apply to an employee in a "bona fide executive, administrative, or professional capacity."[41] Clearly, Plaintiff's position falls within this exception to the FLSA overtime provision, and therefore, he is not entitled to relief under the FLSA. Therefore, because Plaintiff has failed to state a claim upon which relief may be granted, we grant Defendants' motion with respect to this claim.

### i. *Quantum Meruit*

Plaintiff pleads that in addition to or in the alternative of his breach of contract claims, he is entitled to a claim of quantum meruit for services performed for Defendants for which he did not receive full pay. Plaintiff's claim rests solely on the allegations that he was not paid overtime for work performed in excess of 40 hours per week, and that he only received a $500 bonus for completed projects rather than a bonus equal to that of Mr. Nuss. Defendants argue that Plaintiff's allegations cannot withstand a motion to dismiss, as he has failed to allege that he performed services to which he was not paid or was entitled to pay, and because, as Plaintiff admits in his Petition, he in fact did receive a bonus for completed projects.

---

[40]29 U.S.C. § 201 *et seq.*

[41]29 U.S.C. § 213(a)(1).

The basic elements of a claim for quantum meruit, or unjust enrichment, are (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge of the benefit by the defendant, and (3) acceptance or retention of the benefit under circumstances that make it inequitable for the defendant to retain the benefit without payment of its value.[42] Defendants do not argue that Plaintiff had conferred no benefit or that they were unaware of that benefit, but rather, claim that Plaintiff received a salary for all the work he performed, that he was not entitled to overtime pay under the FLSA, and he received a bonus for completed projects. Thus, Defendants contend Plaintiff has failed to allege any instance where he performed any services that he did not receive the compensation he was entitled, which is fatal to such a claim. We agree.

As the Court concluded regarding Plaintiff's FLSA claim, Plaintiff was not entitled to receive overtime pay for services he performed for Defendants. Therefore, because Plaintiff does not allege that Defendant failed to pay his salary, a quantum meruit claim with respect to overtime pay fails to state a claim entitling him to relief. Similarly, Plaintiff does not allege that he was not paid any bonus for completed projects, but asserts that he was not paid the same bonus as Mr. Ness. That claim, however, turns on whether Plaintiff can prove his oral contract claim. If he succeeds, that claim will provide sufficient remedy. If Plaintiff fails to prove that claim, he would not otherwise be entitled to any additional bonus above that which he admits he already received.[43] Therefore, we grant Defendants' motion with respect to Plaintiff's quantum meruit claim.

### j. Fraud

---

[42]*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 177, 910 P.2d 839, 847 (1996). Quantum meruit and unjust enrichment are equivalent theories under Kansas Law. *Id.*

[43]The Court further finds that any claim that Plaintiff might be alleging for payment of bonuses for project that were to be completed in the future also fails because as alleged, he was to be paid bonus for projects completed, not projects to be completed in the future after his termination.

A fraud claim must be pled with particularity.[44]  A plaintiff must allege that: (1) a false statement was made as a statement of existing or material fact; (2) the representation was known to be false by the party making it or was recklessly made without knowledge concerning falsity; (3) the representation was intentionally made for the purpose of inducing another party to act upon it; (4) the other party reasonably relied and acted upon representation made; and (5) the other party sustained damage by relying upon the representation.[45]  A representation is material when it relates to a matter so substantial so as to influence the party to whom it was made.[46]

Here, Plaintiff alleges that Defendants committed fraud by instructing him to not record hours on his timesheet in excess of 40 hours.  Defendants argue that Plaintiff has failed to plead fraud with required particularity to withstand a motion to dismiss on the pleadings.  They argue that nothing in Plaintiff's Petition alleges how Defendant intended to deceive him by instructing him to record his time in this fashion, nor has he alleged how he relied on the statements to his detriment. More importantly, Defendant asserts that Plaintiff has not alleged how this instruction was a material false statement in light of his being an exempt salaried employee under the FLSA.  Defendants contend that as an overtime exempt employee, Plaintiff was unable to rely on such an instruction to his detriment, and regardless of how he recorded his time, he received the compensation he was owed.  Defendants, therefore, suggest that Plaintiff's Petition fails to state a claim upon which he is entitled to relief.

---

[44]Fed. R. Civ. P. 9(b); *see also Nelson v. Nelson*, 288 Kan. 570, 583, 205 P.3d 715, 726 (2009) (citing K.S.A. § 60-209(b)); *Knop v. Gardner Edgerton Unified Sch. Dist. No. 231*, 41 Kan. App. 2d 698, 707, 205 P.3d 755, 763 (2009).

[45]*Kelly v. VinZant*, 287 Kan. 509, 515, 197 P.3d 803, 808 (2008).

[46]*Id.* (citing *Wolf v. Brungardt*, 215 Kan. 272, 524 P.2d 726 (1974)).

After construing Plaintiff's Petition in its entirely, the Court concludes that Plaintiff has failed to sufficiently state a cause of action for fraud. While Plaintiff alleges he was advised to not record hours worked in excess of 40 hours, he failed to identify by whom or when this statement was made, does not allege how such statement was false, material, or deceptive, or how he believed such statement to be true and thus relied on it to his detriment. It does appear that Plaintiff might be attempting to allege that as a result of this statement, he was damaged in that he rendered services, moved his personal belongings, and had terminated other employment to accept the position with Defendants. This allegation, however, does not support this claim, as it relates to actions already taken in the course of accepting employment and not to actions subsequent to and in reliance of the statement to not record time. Therefore, we grant Defendants' motion with respect to Plaintiff's fraud claim. Further, we find that permitting Plaintiff to amend his Petition to correct these particularity deficiencies would be futile based on our previous discussion regarding overtime pay under the FLSA.[47]

### k. ERISA

Plaintiff alleges that upon accepting his position with Defendants, it was represented to him that he would have an interest in the Value Place Employee Trust (hereinafter "Trust" or "Plan"). In support, Plaintiff references his attached offer letter which states, in part, that "[s]ubject to waiting periods, you will be eligible for . . . participation in the Value Place Employee Trust."[48]  Plaintiff further alleges that at no time during his employment with Defendants was he ever notified of his

---

[47]*See ICE Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 4570930, at *5 (D. Kan. Dec. 27, 2007) (stating that the Court may deny a motion to amend as futile if the amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted).

[48]Doc. 1-2, p.31.

interest in the Trust, nor was he provided with any information concerning his enrollment. Plaintiff further alleges that as a result of the foregoing, Defendants were negligent in administering the Plan, and therefore, he is entitled to relief under ERISA § 502(c)(3), 29 U.S.C. § 1132(a)(3).

Defendants argue that Plaintiff was never a qualified participant under the Plan, nor has he pled that he was a qualified participant. Defendants further assert that the Plan was neither a qualifying pension benefit plan nor a welfare benefit plan under ERISA, and therefore, any ERISA claim fails.

We conclude that under the liberal pleading standard, Plaintiff has sufficiently alleged a violation of ERISA to withstand a Motion to Dismiss on the Pleadings. Plaintiff has alleged, albeit in a disjointed fashion, the existence of an ERISA plan that he claims Defendants failed to properly administer, and specifically referred to notice requirements of the Act. Plaintiff's factual allegations are sufficient to permit both Defendants and the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.[49] Therefore, based on the foregoing, we deny Defendants' motion with respect to this claim. However, because Plaintiff has failed to allege sufficient factual allegations that the individual defendants were fiduciaries of the Plan "to raise a right to relief above the speculative level," Defendants' motion is granted with respect to the individual defendants.

### l. Civil Conspiracy

---

[49]The Court again notes that while Defendants arguments regarding this claim may have merit, such arguments are more appropriate for a summary judgment motion, as they require the Court to look outside the pleadings to reach its decision.

Defendants also seek judgment on the pleadings against Plaintiff's civil conspiracy claim. Plaintiff alleges that by making defamatory statements regarding his performance and by not permitting him to respond to those statements, all Defendants conspired to terminate his employment in breach of his written and/or implied and/or oral contract of good faith and fair dealing. It also appears that Plaintiff is alleging that Defendants conspired to prevent him from receiving overtime pay by instructing him to not report any time worked over 40 hours per week.

Kansas recognizes civil conspiracy as an actionable tort.[50] The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."[51] "The mere agreement to do a wrongful act can never alone amount to a tort [of civil conspiracy] . . . ."[52] In addition, civil conspiracy is not actionable if there is no commission of some wrong giving rise to a cause of action independent of the conspiracy.[53] Thus, if the plaintiff is unable to maintain an action for the underlying wrong or tort, then he cannot maintain an action for the conspiracy to commit that wrong or tort.[54]

---

[50]*Stoldt v. City of Toronto*, 234 Kan. 957, 966, 678 P.2d 153, 161 (1984); *see also Citizens State Bank v. Gilmore*, 226 Kan. 662, 671, 603 P.2d 605 (1979).

[51]*Diederich v. Yarnevich*, 40 Kan. App. 2d 801, 811, 196 P.3d 411, 419 (2008).

[52]*Masters v. Daniel Int'l Corp.*, 1991 WL 107410, at *7 (D. Kan. May 3, 1991) (quoting *Hokanson v. Lichtor*, 5 Kan. App. 2d 802, 808, 626 P.2d 214 (1981) (quoting *W.G. Platts, Inc. v. Platts*, 73 Wash. 2d 434, 439, 438 P.2d 867 (1968) (quoting W. Prosser, Law of Torts § 34, at 260 (3d ed. 1964)).

[53]*Knight v. Neodesha, Kan. Police Dept.*, 5 Kan. App. 2d 472, 476, 620 P.2d 837, 843 (1980) (citing 15A C.J.S. Conspiracy § 8).

[54]*Masters*, 1991 WL 107410, at *7 (citing *Gillipsie v. Seymour*, 14 Kan. App. 2d 563, 572, 796 P.2d 1060, 1066 (1990), *rev'd on other grounds* 250 Kan. 123, 823 P.2d 782 (1991)).

Here, with the exception of Plaintiff's breach of oral contract relating to the amount bonus he was due to receive and his negligence claim with regard to the Trust, the Court has dismissed Plaintiff's remaining claims for failure to state a claim upon with relief may be granted, so those claims cannot support a conspiracy claim. As to Plaintiff's claim regarding the Trust, his allegations concerning Defendants mishandling of the Trust under ERISA do not form a basis for conspiracy, nor does he allege such is the case. The Court has also granted Plaintiff leave to amend his Petition for his defamation claim, which theoretically, could form the basis for a civil conspiracy claim; however, for the following reasons, this conspiracy claim nonetheless fails.

Plaintiff first alleges that VPPM and VPRES, affiliated corporations, conspired to cause his termination. In addition, he claims that Defendants Redfern, Rupe, and Bolton, both as officers and/or directors for said corporations and in their individual capacities, conspired to cause his termination by making false and defamatory statements during meetings about his performance and his use of sick leave. Plaintiff does not allege, however, that any individual defendant made any statements or otherwise acted outside the scope of their employment.

A conspiracy claim requires at least two or more persons. A corporation is not capable of conspiring with itself,[55] and generally, conspiracy claims will not lie against affiliated corporations.[56] Additionally, officers and directors of a corporation cannot conspire with each other when acting on behalf of the corporation.[57] Because Plaintiff's claim is directed against affiliated corporations

---

[55]*Lantec, Inc., v. Novell, Inc.*, 306 F.3d 1003, 1028 (10th Cir. 2002) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-72 (1984)); *see also Vulcan Materials Co. v. Atofina Chem. Inc.*, 355 F. Supp. 2d 1214, 1239 (D. Kan. 2005).

[56]*Vulcan*, 355 F. Supp. 2d at 1239.

[57]*Diederich*, 40 Kan. App. 2d at 811, 196 P.3d at 419.

and against officers and/or directors of those corporations, his claim fails to state a claim entitling him to relief. Furthermore, there are no allegations that these individual defendants acted other than in their official capacities on behalf of the corporations, and as a result, we can only conclude that their acts are acts of the corporations.[58] Therefore, we grant Defendants' motion with regard to Plaintiff's civil conspiracy claim.

### m. Violation Missouri Statutes

Plaintiff appear to allege that Defendants acted in bad faith by not responding to his written request for a letter from Defendants identifying specific reasons for his termination, along with a statement of the character and nature of his services, which he claims violated Sections 290.140 and 290.152 of the Missouri Revised Statutes. In support of these allegations, Plaintiff attached as an exhibit to his Petition (Exhibit C) the letter he mailed to Defendants.

Pursuant to Missouri's Service Letter Statute, when an employee of a corporation doing business in Missouri is discharged or voluntarily resigns, he may, within 90 days of such termination or resignation, request by certified mail the reasons for discharge and/or the nature and character of his services during employment.[59] Specifically, the statute provides in part:

> Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, *with specific reference to the statute*, it shall be the duty of the superintendent or manager of said corporation to issue to such

---

[58] *See id.* at 811-12, 196 P.3d at 419-20.

[59] Mo. Rev. Stat. § 290.140.

employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.[60]

Defendants first argue that because Kansas law governs this dispute, Plaintiff's claim alleging it violated Missouri law has no relevance. Nonetheless, Defendants contend that they did not violate Missouri's service letter statute, arguing that because Plaintiff's letter failed to meet the basic requirements of the statute, such as the mandatory provision requiring he cite specifically to the statute, it had no duty to respond. We agree.

The plain language of the statute requires that a specific reference to the statute be included when requesting a letter from the employer. Under Missouri law, "literal compliance with the express language of the statute [is] required,"[61] and because Plaintiff's letter fails to satisfy the requirements of the statute, his claim fails as a matter of law.

In addition to claiming Defendants' violated Missouri's Service Letter Statute, Plaintiff also claims they violated Missouri law requiring an employer to respond to a prospective employer's request for information based on his same letter. Defendants argue that the Missouri statute to which Plaintiff cites provides immunity for job references and has no bearing on the issues here. We agree.

Section 290.152 of the Missouri Revised Statutes requires an employer to respond in writing "to a written request concerning a current or former employee from an entity or person which the

---

[60]§ 290.140(1) (emphasis added).

[61]*Birton v. Wal-Mart, Inc.*, 209 F. Supp. 2d 993, 999 (E.D. Mo. 2002).

employer *reasonably believes to be a prospective employer of such employee*."[62]  The statute further addresses an employer's liability in disclosing certain information to a prospective employer.[63]  Here, Defendants received this letter directly from Plaintiff and not from a prospective employer of Plaintiff, and therefore, this statute is inapplicable.  Accordingly, we grant Defendants' motion with regard to this claim.

**2. Motion to Enforce Prior Orders of the Court**

Plaintiff moves the Court to require that the parties mediate pursuant to the orders of both the Jackson County, Missouri court and the United States District Court for the Western District of Missouri.  Plaintiff argues that after initially filing this action in Jackson County, Missouri, that court ordered mandatory mediation pursuant to Missouri Supreme Court Rule 17.  Plaintiff contends that rather than complying with the state court's order, Defendants removed the case to federal court.  After removal, Plaintiff asserts that the federal court ordered mandatory mediation, and rather than comply, Defendants filed a motion to transfer the case to the United States District Court for the District of Kansas.  Based on those previous court orders, Plaintiff moves this Court to order mandatory mediation.

Defendants disagree that they failed to comply with any court-ordered mediation.  Defendants assert that the Jackson County, Missouri court's order was based on that state's supreme court rules, and once removed to federal court, that court order was no longer applicable because the Missouri state court no longer had jurisdiction.  Defendants further argue that once removed, the W.D. of Missouri filed a Notice of Inclusion in the Early Assessment Program (EAP Assignment),

---

[62]Mo. Rev. Stat. § 290.152 (emphasis added).

[63]*See id.*

which provided that after responsive pleadings were filed, the parties would be notified that they had 15 days to select an outside neutral and file notice with the court.  Defendants claim that the W.D. of Missouri never issued such a notice to the parties, so the time to select an outside neutral never commenced.  Thus, Defendants contend they never violated a mediation order of the federal court.

After reviewing the parties' briefing and the dockets of both this District and the Western District of Missouri, we conclude that no mediation order has been violated.  As Defendants have asserted, once Defendants removed this action from the Missouri state court to the federal court, the Missouri court lost jurisdiction, and it's order to mediate was no longer controlling.  Thus, Defendants did not violate the Missouri state court's mediation order.

Pursuant to the EAP Assignment issued by the W.D. Missouri on October 23, 2008, the time to select an outside neutral did not commence until the parties received notice from the court.  This Court was unable to locate any entry in the docket that indicates notice was sent to either party after responsive pleadings were filed.  Absent such notice, the parties were not obligated to select an outside neutral or to begin mediation.  Therefore, Defendants violated no mediation order of the W.D. of Missouri court.

As part of this motion, Plaintiff also moves the Court to compel discovery that he issued to Defendants prior to this case being transferred to this Court.  After Plaintiff served discovery, Defendants moved the W.D. of Missouri court for an extension of time to respond to Plaintiff's discovery requests.  The court granted Defendants' motion, allowing them until February 27, 2009 to respond.  Prior to that date, however, Defendants filed a Motion to Transfer this case to the District of Kansas, at which time the W.D. of Missouri stayed all discovery pending resolution of that motion.  After the court granted the motion to transfer, this Court again issued an order staying

all discovery until further court order. That order staying discovery has not yet been lifted. Accordingly, Defendants were not, and as of this opinion, are not required to respond to any discovery requests served by Plaintiff. Thus, contrary to Plaintiff's assertions, none of his Request for Admissions are deemed admitted as a result of Defendants lack of response to said requests. Therefore, because no mediation order is in effect and because discovery had been stayed in this action, Plaintiff's Motion to Enforce Prior Orders of the Court and Motion to Compel (Doc. 30) is denied.

### 3. Motion to Transfer

Plaintiff, on November 19, 2009, filed a Motion to Transfer this action, arguing that Wichita is an inconvenient forum for him because he now resides and works in Denver, Colorado. Plaintiff, however, does not indicate where this Court should transfer the action other than to indicate that it should be moved to "a neutral court that is of equal distance between the parties and/or is equally inconvenient."[64] Because there is no other federal courthouse between Wichita, Kansas and Denver, Colorado, we will construe Plaintiff's motion as one to transfer this case from the District of Kansas to the District of Colorado.

Under 28 U.S.C. § 1404, the district court has broad discretion in deciding a motion to transfer based upon a case-by-case review of convenience and fairness.[65] Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may

---

[64]Doc. 42, p.2.

[65]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

transfer any civil action to any other district or division where it might have been brought."[66]  In deciding whether to transfer the case, the Court considers the following factors: (1) plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4) the possibility of obtaining a fair trial; and (5) all other practical considerations that make a trial easy, expeditious, and economical.[67]

Applying these factors to the case at hand, the Court finds that transfer is not warranted because Wichita is clearly the more convenient venue to try this case. It is Plaintiff's burden, as the party seeking to now transfer this case, to prove that the existing forum is inconvenient.[68]  As the courts in this district have emphasized, the relative convenience of the forum is a primary, if not the most important, factor to consider in deciding a motion to transfer.[69]  As noted in the W.D. of Missouri court's order transferring this case to Wichita, all key witnesses for this case are located in Wichita.  In addition, non-party witnesses, who also reside in the Wichita area, would be outside the subpoena power of the federal court in Colorado due to the hundred mile limit.[70]  Plaintiff has identified no witnesses that reside in Colorado.

In addition to identifying no witness residing in Colorado, Plaintiff has identified no conduct giving rise to this action that occurred in Colorado.  Importantly, Plaintiff's Petition rests on conduct that occurred in Kansas, and particularly, in the Wichita area.  He was employed in Wichita, his

---

[66]28 U.S.C. § 1404(a).

[67]*Chrysler Credit Corp.*, 928 F.2d at 1516.

[68]*See Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

[69]*See e.g., Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a).").

[70]*See* Fed. R. Civ. P. 45(c)(3)(A)(ii).

office was in Wichita, he was terminated in Wichita, and he resided in Wichita while employed with Defendants. In fact, the only relationship of this case to Colorado is Plaintiff, which resulted only after Plaintiff moved to Colorado subsequent to commencing this lawsuit. Plaintiff's only justification for transfer is the economical impact on him by maintaining this action in Wichita. While it may be true that Plaintiff will now have to incur increased costs in transportation and other expenses in traveling back to Wichita for trial, such expenses do not, in and of themselves, overcome the reasons that the W.D. of Missouri identified in justifying transfer of this case to this district. Therefore, we conclude that because Plaintiff has not met his burden, his Motion to Transfer (Doc. 41) is denied.

**4. Renewed Motion for Reconsideration of Transfer**

Plaintiff also moves for reconsideration of the W.D. Missouri court's decision to transfer this case to the District of Kansas. Plaintiff asserts that he filed his objections to transfer in Missouri, and that court failed to rule on said motion. However, as a result of Plaintiff's November 19, 2009 Motion to Transfer this case to Colorado, we deny this motion as moot.

Even if this motion was not moot, we would nonetheless deny Plaintiff's request. Federal Rule of Civil Procedure 59(e) allows a party to file a motion to amend or alter a previous judgment within 10 days after the entry of that judgment, but it is only proper in a limited number of situations, including "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."[71] A motion to reconsider is not appropriate for the purpose of rearguing issues already considered, or to make a

---

[71]*Renfro v. Spartan Computer Servs., Inc.*, 2008 WL 1924946 at *1 (D. Kan. 2008).

new argument.[72] Rather "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[73]

As just noted, a motion to reconsider is only proper if at least one of three conditions are met.[74] In this case, Plaintiff does not meet any of these conditions. First, no intervening change in the law has occurred between the W.D. Missouri court's ruling on Defendants Motion to Transfer and Plaintiff's filing of his objections to that ruling or subsequent motions to reconsider. Next, Plaintiff has not shown that new evidence has been discovered which would alter the court's previous judgment. The W.D. of Missouri court considered all arguments and information initially before it when it granted Defendants' Motion to Transfer. Finally, Plaintiff has not shown clear error or manifest injustice. Therefore, Plaintiff's Motion to Reconsider (Doc. 30) is denied.[75]

## 5. Motion for Leave to Amend Pleadings

Plaintiff moves for leave to amend his pleadings to assert a class action claim for FLSA reporting violations. Plaintiff asserts that by directing employees to not record all hours worked to avoid paying overtime, Defendants violated the FLSA. Plaintiff claims that he believes other

---

[72]*Eckman v. Superior Indus. Intern., Inc.*, 2007 WL 2333348 at *1 (D. Kan. 2007).

[73]*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[74]*Renfro*, 2008 WL 1924946 at * 1.

[75]Even if this Court were to construe Plaintiff's motion as one to transfer this case back to the W.D. of Missouri, such motion would likewise be denied as Plaintiff has presented no new information that convinces this Court that Missouri would be a more convenient forum than Kansas. We also note Plaintiff's argument that the Consent to Magistrate signed by the parties in the W.D. of Missouri created a contract between the parties and precluded Defendants from moving for transfer of the case is without merit. A Consent to Magistrate consents to a Magistrate Judge's jurisdiction, rather than that of a District Judge to conduct the civil action and all associated proceedings, and does not operate to waive defenses a party may raise during the course of the litigation. *See* Fed. R. Civ. P. 73.

Development Services Managers were also instructed to not record their hours worked over 40 hours per week, which he believes justifies adding this claim.  We disagree.

"Although Fed.R.Civ.P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.[76]  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[77]  An action under the FLSA may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated;"[78] however, as previous discussed, Plaintiff's position was exempt from the overtime provisions of the FLSA, and accordingly, he would not be a "similarly situated" person to bring such a claim.  As a result, we conclude that permitting Plaintiff to amend his Petition to include a class action FLSA claim would be futile, and therefore, we deny his Motion to Amend (Doc. 41).[79]

Accordingly,

---

[76]*See Phillips v. Pub. Serv. Co. of New Mexico*, 58 Fed. Appx. 407, 409 (10th Cir. 2003) (stating that "sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

[77]*Jefferson County Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999); *ICE Corp.*, 2007 WL 4570930, at *5.

[78]29 U.S.C. § 216(b).

[79]The Court would also deny Plaintiff's Motion to Amend his Pleadings to add an FLSA class action for not complying with this Court's procedural requirements.  D. Kan. Rule 15.1 requires that any motion for leave to amend include as an attachment the proposed pleading.  Plaintiff, however, failed to include any proposed pleading with his motion.  *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (a  plaintiff's *pro se* status does not relieve him from complying with this court's procedural requirements) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a *pro se* litigant must follow the same rules of procedure as other litigants).  This rule, however, does not apply to the Court's granting of leave to amend sua sponte.

**IT IS THEREFORE ORDERED** that Defendants Motion for Judgment on the Pleadings (Doc. 36) is hereby GRANTED in part, and DENIED in part. Plaintiff shall have up to and including March 15, 2009 to amend his Complaint as to his Defamation claim.

**IT IS FURTHER ORDERED** that Plaintiff's combined Motion to Enforce the Prior Orders of the Court and Motion for Reconsideration (Doc. 30) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's combined Motion to Transfer and Motion for Leave to Amend Pleadings to add an FLSA Class Action (Doc. 41) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 19th day of February, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE